UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

TAYLOR MOORE

    Plaintiff,                                                Case No:

                                                                               Hon.

-vs-                                                                      Mag.

WALLOON LAKE RECOVERY LODGE, LLC,
A Michigan Limited Liability Company, doing business
as BEAR RIVER HEALTH and also BEAR RIVER
HEALTH AT WALLOON LAKE

  Defendant.

_____/
TIM P. SEEGER (P83315)
Attorney for Plaintiff
801 Broadway, NW, Ste. 302
Grand Rapids, MI  49504
P: (616) 259-8463
F: (517) 393-3000
E: tseeger@4grewal.com
_____/

        **I.**        **COMPLAINT AND JURY DEMAND**

**NOW COMES**, Plaintiff, Taylor Moore, by and through her attorneys Tim P. Seeger and Grewal Law PLLC, and states as follows:

        **II.**        **JURISDICTION AND PARTIES**

1. This is an action for disability discrimination in violation of the Americans with Disabilities Act of 1990, 42 USC §12111 et seq., and Michigan's Persons with Disabilities Civil Rights Act, MCL §37.1101 et seq., arising out of Plaintiff's employment relationship with Defendant, Failure to Accommodate, and Retaliation

1

2. Plaintiff, Taylor Moore, is an individual who is and at all times relevant herein was, a resident of the County of Otsego, State of Michigan.

3. Defendant WALLOON LAKE RECOVERY LODGE, LLC, doing business as BEAR RIVER HEALTH and also BEAR RIVER HEALTH AT WALLOON LAKE is a Domestic Limited Liability Company with its principal place of business in Boyne Falls, Michigan in the County of Charlevoix.

4. This Honorable Court has "federal question" jurisdiction pursuant to 28 USC §1331 for the reason that the Plaintiff's Complaint states claims pursuant to Title I of the Americans with Disabilities Act of 1990 (ADA), 42 USC 12101 et seq.

5. This Court has jurisdiction over State pending claims also known as the Persons with Disabilities Civil Rights Act (PDCRA), MCL 37.1101 et seq.

6. This Honorable Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 USC §1367, and Plaintiff's federal law claims substantially predominate over Plaintiff's state law claims.

7. Venue is proper in this judicial district pursuant to 28 USC §1391 and 28 USC §102 for the reason that the unlawful acts alleged occurred within this judicial district.

8. Plaintiff timely filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

9. On May 3, 2022, Plaintiff received her Right-to-Sue Letter from the EEOC, dated April 25, 2022, attached as **Exhibit A**.

10. Plaintiff filed this Complaint within 90-days of receiving her Right-to-Sue Letter from the EEOC.

### III.    FACTS

11. On or about December 13, 2020, Plaintiff began her employment with Defendant as a security officer.

12. On or about December 14, 2020 Plaintiff attended orientation.

13. Plaintiff attended a training day on December 15, 2020.

14. Due to the reasons stated herein, and in particular Defendant's discrimination and failure to provide a reasonable accommodation, Plaintiff would never work another shift for Defendant.

15. Plaintiff was ultimately terminated on January 11, 2021.

16. At all relevant times, Plaintiff performed her job duties and responsibilities in a manner that, at a minimum, demonstrated that she was qualified to retain her position.

### **PLAINTIFF'S DISABILITY**

17. Plaintiff has a disability as defined by both the ADA and the PDCRA, namely: bi-polar disorder, mood disorder, post-traumatic stress disorder, anxiety, ADHD, and depression.

18. Plaintiff maintained these diagnoses at the time in which she was hired, during all relevant times of her employment, and they persist to date.

19. Plaintiff utilizes a service dog, Flex, to assist with her bipolar disorder, anxiety, and post-traumatic stress disorder.

20. The service dog was trained by Plaintiff for over a year while she attended Michigan State University.

21. The service dog assists Plaintiff in the following ways:

    a. Flex has been trained to alert bark and alert people when Plaintiff is having an anxiety attack, panic attack, or needs assistance

    b. Flex has been trained to bark to alert Plaintiff to take her medication;

    c. Flex has been trained to hug Plaintiff when she is suffering from an anxiety attack, panic attack, or having flash backs.

    d. Flex has been trained to provide physical contact to Plaintiff when he senses the onset of a panic or anxiety attack.

22. Plaintiff has utilized Flex as a service dog for six (6) years, attended schooling with Plaintiff, and he accompanied Plaintiff to other jobs all without conflict.

23. Defendant did not ask for any of this information regarding the service dog's tasks during Plaintiff's employment.

## PLAINTIFF'S REQUEST FOR ACCOMMODATION

24. While interviewing for the position. Plaintiff made Defendant aware of her service animal.

25. Plaintiff made Defendant aware that Plaintiff required the use of the service animal while she worked for Defendant.

26. With this information, Plaintiff was hired.

27. Plaintiff again raised the need for her service dog to multiple employees.

28. Plaintiff was then informed by Sonya Goddard, Human Resource Assistant for Defendant, that Plaintiff would not be allowed to bring her service dog to work due to potential allergy concerns.

29. On December 17, 2020, Plaintiff emailed Cathy Bond ("Ms. Bond"), Chief of Staff for Defendant, seeking clarification about bringing her service dog to work.

30. In this e-mail, Plaintiff informed Ms. Bond of ADA regulations regarding service dogs and potential allergies.

31. Plaintiff further provided Ms. Bond information regarding her service dog, his training, and that she would be bringing the dog into work with her for her next shift on December 21, 2020.

32. On December 18, 2020, Ms. Bond responded stating that she was informed the service dog was an emotional support dog and that Ms. Bond would need medical documentation that the dog was a service animal.

33. Plaintiff responded informing Ms. Bond that, pursuant to the ADA, no person is required to provide documentation that the dog is registered, licensed, or certified as a service animal, however, Plaintiff would provide information from her physician.

34. Ms. Bond stated this would not suffice and Plaintiff was required to provide, "the documentation from the ADA that this is a **registered** service dog." (emphasis added).

35. Plaintiff again stated that there is no requirement to provide this documentation and there is no registry for service dogs.

36. Ms. Bond then responded by suspending Plaintiff while Defendant "investigate[d] the matter."

37. On December 22, 2020, Jason E. Sweeney, JD, and Compliance Director for Defendant, emailed staff for Defendant regarding service animals.

38. In his correspondence Mr. Sweeney informed Ms. Bond, and Ms. Goddard, that Plaintiff has identified the dog as a service dog, that Defendant cannot ask for documentation, and Defendant can only ask if Plaintiff has a disability and what service the dog has been trained to performed.

39. On December 23, 2020, Daniel Hartman, Executive Director and/or owner of Defendant, sent a letter to Plaintiff.

40. The letter informed Plaintiff that Defendant has a "no animal policy," with the exception of qualified service animals.

41. This letter was the first Plaintiff was informed of the alleged "no animal policy."

42. Based upon information and belief, Defendant did not maintain a written no animal policy in any of the material provided to Plaintiff or similar employees.

43. The letter went on to request Plaintiff provide various documentation including, but not limited to:

    a. Documentation from a physician demonstrating Ms. Moore has a qualifying disability under the ADA;

    b. Certification from an accredited service animal trainer indicating that the service dog has been trained to assist Plaintiff for her disability;

    c. Certified vaccination records for the service dog.

44. The correspondence went on to state that once these documents are provided, a trial period will begin with the dog to see if the animal will interfere with the business.

45. The correspondence concluded that Mr. Hartman would be placing Plaintiff on suspension, without pay, while he awaited the requested documents.

46. On December 23, 2020, Plaintiff sent an email correspondence to Mr. Hartman and other employees of Defendant.

47. Plaintiff provided Defendants with an Ingham County Rabies Vaccination Certificate and Dog License attached as **Exhibit B**.

48. This documentation included a license with the Ingham County Animal Control that identified Flex as a certified service dog.

49. Plaintiff further stated that she was working to obtain a letter from her therapist/providers, as requested.

50. On December 28, 2020, Plaintiff's Counselor, John Dowling, emailed Defendant explaining his work with Plaintiff, the need for the service dog, and his experience with the service dog.

51. On January 6, 2021, Mr. Hartman sent a letter to Plaintiff requesting a meeting on January 11, 2021 at 9:00 am.

52. In this letter, Mr. Hartman requested that Plaintiff bring, "all of the required documentation mentioned in my letter dated December 23, 2020. If you have documentation for your service animal, you may bring it as well."

53. Mr. Hartman made this request despite the information sought being previously provided to him by Plaintiff.

54. Defendant then sent a calendar invite to Ms. Moore for the January 11, 2021 meeting.

55. Plaintiff declined this meeting as she was unavailable that morning due to a previously scheduled doctor's appointment.

56. This conflict was conveyed to Defendant.

57. Due to this conflict, and notice, Plaintiff did not meet with Mr. Hartman on January 11, 2021.

58. There was no attempt by Defendant to reschedule this meeting.

59. On January 11, 2021, Plaintiff received a correspondence from Mackenzie Carroll, Human Resource Deputy Director, that Defendant was terminating Plaintiff for allegedly, "not being a right fit for Bear River Health."

60. Plaintiff never received any compensation for the days she was suspended.

61. Defendant failed to pay this sum despite Plaintiff providing all documentation sought by Defendant.

### COUNT I – VIOLATION OF TITLE I OF THE ADA, AND PDCRA – DISCRIMINATION, AND WRONGFUL TERMINATION

62. Plaintiff repeats and realleges each and every paragraph of this Complaint as though fully set forth herein verbatim.

63. Defendant is a covered entity, and employer, pursuant to 42 U.S. Code § 12111 *et. seq.* of the ADA and MCL 37.1201(b) of the PDCRA.

64. Plaintiff was an employee as defined by 42 U.S. Code § 12111 *et. seq.* of the ADA and MCL 37.1201(b) of the PDCRA.

65. Plaintiff's bi-polar disorder, mood disorder, PTSD, Anxiety, ADHD, and depression constitute a disability, as that term is defined by and pursuant to 42 USC 12102(1) of the ADA, and MCL 37.1103(h), MCL 37.1103(d), MCL 37.1103(d)(ii), and MCL 37.1103(d)(iii) of the PDCRA.

66. Plaintiff was, and is, otherwise qualified to perform the essential functions of her job as security officer.

67. The ADA makes it unlawful to discriminate against a qualified individual in the terms and conditions of employment on the basis of disability. 42 USC 12112(a).

68. Defendant knew Plaintiff had a disability, had a history of a disability, or was perceived by the employer as having a disability.

69. Defendant has intentionally discriminated against Plaintiff because of her disability by:

    a. Terminating her employment;
    b. Suspending Plaintiff, without pay;

    c.  Failing to engage in a proper analysis for her accommodation.

70. These adverse employment actions were due to Plaintiff's disability.

71. As a direct and proximate result of Defendant's discriminatory and illegal acts, which acts were based on unlawful considerations of Plaintiff's disability, Plaintiff suffered damages, including but not limited to: (1) the loss of employment, (2) loss of past and future employment income and employee benefits, (3) personal injuries including but not limited to mental, emotional and psychological distress, anxiety, humiliation, embarrassment, derogation, and physical ailments, (4) a sense of outrage and injury to his feelings, and (5) injury to her professional reputation.

    WHEREFORE, Plaintiff respectfully requests that this Court enter its Judgment against Defendant in whatever amount is shown to be established by the proofs in this cause, together with exemplary and punitive damages, interest, costs and reasonable attorney fees.

**COUNT II – FAILURE TO ACCOMMODATE IN VIOLATION OF ADA AND PDCRA**

72. Plaintiff repeats and re-alleges each and every paragraph of this Complaint as though fully set forth herein.

73. Defendant is a covered entity, and employer, pursuant to 42 U.S. Code § 12111 *et. seq.* of the ADA and MCL 37.1201(b) of the PDCRA.

74. Plaintiff was an employee as defined by 42 U.S. Code § 12111 *et. seq.* of the ADA and MCL 37.1201(b) of the PDCRA.

75. Plaintiff's bi-polar disorder, mood disorder, PTSD, Anxiety, ADHD, and depression constitute a disability, as that term is defined by and pursuant to 42 USC 12102(1) of the

ADA, and MCL 37.1103(h), MCL 37.1103(d), MCL 37.1103(d)(ii), and MCL 37.1103(d)(iii) of the PDCRA.

76. Plaintiff was, and is, otherwise qualified to perform the essential functions of her job as security officer.

77. At the time of her termination, Plaintiff's disability was unrelated to her ability to perform her duties as a security officer.

78. Plaintiff requires reasonable accommodations to perform her job as follows: Plaintiff requires the use of a service dog to assist her with her disabilities.

79. Plaintiff made the request to bring her service dog to work before she was hired, at her orientation, and after she was hired by Defendant.

80. Despite Plaintiff's requests for such accommodations, Defendant failed to make the accommodation available to Plaintiff.

81. Defendant initially denied the request alleging "potential" allergy issues.

82. Defendant then, improperly, requested documentation from Plaintiff showing the dog was "ADA certified."

83. The accommodation requested by Plaintiff would not have caused an undue hardship to Defendant.

84. Defendant failed to engage in an interactive process with Plaintiff to come up with an accommodation that would allow Plaintiff to bring her service dog into work.

85. Plaintiff provided all documentation sought by Defendant, even when such documentation was not required to be provided under the law, or even impermissible to be sought.

86. Plaintiff was also generally treated with hostility, disrespect, callousness, and/or indifference by Defendant, amid disparaging comments about Plaintiff's service dog and threats to Plaintiff's employment, with HR staff making it abundantly clear that Defendant took a dim view of Plaintiff's accommodation request.

87. The use of a service dog created no undue burden, or cost, to Defendant.

88. In short, allowing Plaintiff to bring her service dog to work would not create an undue hardship.

89. Defendant scheduled one meeting to discuss the various documents requested by Defendant and provided by Plaintiff.

90. Plaintiff did not attend the meeting due to a schedule conflict.

91. There was no further attempt to discuss the accommodation.

92. Instead, Defendant terminated Plaintiff.

93. Defendant terminated Plaintiff stating she was "not a right fit."

94. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered damages, including but not limited to, loss of past and future income and employment benefits, outrage, humiliation, embarrassment, mental anxiety, emotional distress, and loss of professional reputation.

   WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a Judgment against Defendant in whatever amount is shown to be established by the proofs in this cause, together with exemplary damages, interest, costs, and reasonable attorneys' fees.

## COUNT III – RETALIATION - ADA AND PDCRA

95. Plaintiff repeats and re-alleges each and every paragraph of this Complaint as though fully set forth herein.

96. Defendant is a covered entity, and employer, pursuant to 42 U.S. Code § 12111 *et. seq.* of the ADA and MCL 37.1201(b) of the PDCRA.

97. Plaintiff was an employee as defined by 42 U.S. Code § 12111 *et. seq.* of the ADA and MCL 37.1201(b) of the PDCRA.

98. Plaintiff engaged in a protected activity under the ADA and PDCRA.

99. As a result of her engagement, Plaintiff suffered an adverse employment action, including, but not limited to, suspension without pay and termination.

100. A causal connection exists between Plaintiff's engagement in the protected activity and the adverse employment action.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a Judgment against Defendant in whatever amount is shown to be established by the proofs in this cause, together with exemplary damages, interest, costs, and reasonable attorneys' fees.

PLAINTIFF REQUESTS relief from this court against Defendant as follows:

a. an order of this court awarding Plaintiff compensatory and non-compensatory damages in an amount to be determined at trial in this matter

b. an order of this court awarding Plaintiff punitive damages in an amount to be determined at the trial of this matter

c. an award to Plaintiff of attorney fees, costs of litigation, and interest

d.  an order of this court granting Plaintiff further relief that it deems just and equitable

**DEMAND FOR TRIAL BY JURY IS HEREBY MADE**

Dated:  July 29, 2022

Grewal Law, PLLC

By: /s/ *Tim P. Seeger*
TIM P. SEEGER (P83315)
Attorney for Plaintiff
801 Broadway, NW, Ste. 302
Grand Rapids, MI  49504
(616) 259-8463
tseeger@4grewal.com

## DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, TAYLOR MOORE, through and by her attorney, Tim P. Seeger, and hereby makes a demand for a trial by jury in the above entitled matter.

Dated:  July 29, 2022

Grewal Law, PLLC

By:  /s/ *Tim P. Seeger*
TIM P. SEEGER (P83315)
Attorney for Plaintiff
801 Broadway, NW, Ste. 302
Grand Rapids, MI  49504
(616) 259-8463
tseeger@4grewal.com