UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAYLOR MOORE,

        Plaintiff,                              Hon. Phillip J. Green

v.                                                    Case No. 1:22-cv-00688

WALLOON LAKE RECOVERY
LODGE, LLC,

        Defendant.
_____/

**OPINION**

This matter is before the Court on Defendant's Motion for Summary Judgment. (ECF No. 42). The parties have consented to proceed in this Court for all further proceedings, including trial and an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Jane M. Beckering referred this case to the undersigned. For the reasons discussed herein, Defendant's motion will be denied.

**BACKGROUND**

Plaintiff Taylor Moore initiated this action against Defendant Walloon Lake Recovery Lodge, LLC (hereinafter Bear River Health or BRH). In her Complaint (ECF No. 1) Plaintiff asserts the following,

On or about December 13, 2020, Defendant hired Plaintiff as a "security guard." Plaintiff suffers from bi-polar disorder, mood disorder, post-traumatic stress disorder (PTSD), anxiety, depression, and attention-deficit/hyperactivity disorder

(ADHD). Plaintiff relies on a service dog, Flex, to assist her. When interviewing with Defendant, Plaintiff reported her impairments as well as the fact that she relied on Flex, her service dog.

Plaintiff's subsequent request to have Flex accompany her on the job was denied. Defendant instead requested a variety of information regarding Flex, which Plaintiff attempted to provide. Defendant, apparently unsatisfied with Plaintiff's response, suspended Plaintiff while the matter was investigated. Defendant's Executive Director, Dan Hartman, subsequently requested that Plaintiff provide the following: (1) documentation from a physician demonstrating that Plaintiff has a qualifying disability under the ADA; (2) certification that Flex has been trained to assist Plaintiff with her disability; and (3) certified vaccination records for Flex. In response, Plaintiff submitted Flex's vaccination certificate as well as documentation identifying Flex as a "certified service dog." Plaintiff's therapist subsequently provided Defendant with information regarding his work with Plaintiff and Flex.

On January 6, 2021, Hartman authored a letter to Plaintiff requesting that she attend a meeting on January 11, 2021, to discuss the matter. Plaintiff also received an email inviting her to attend this meeting. Plaintiff declined the invitation because she had a previously scheduled medical appointment. Defendant made no attempt to reschedule this meeting, but rather simply terminated Plaintiff's employment for "not being a right fit."

Plaintiff alleges that Defendant violated her rights under the ADA as well as the Michigan Persons with Disabilities Civil Rights Act. Specifically, Plaintiff

alleges that she was subjected to discrimination, retaliation, and a failure to accommodate. Defendant now moves for summary judgment. Plaintiff has responded to the motion. The Court finds that oral argument is unnecessary. *See* W.D. Mich. LCivR 7.2(d).

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case." *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some

metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735. Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 2021 WL 1257802 at *4.

## ANALYSIS

### I. The ADA's Interactive Process

In support of their motion for summary judgment, Defendant advances a single argument, that Plaintiff "failed to participate in the interactive process." The Court is not persuaded.

The regulations that accompany the ADA provide, in part, that "[t]o determine the appropriate reasonable accommodation [for a given employee,] it may be

necessary for the [employer] to initiate an informal, interactive process with the [employee]." *Kleiber v. Honda of America Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007) (quoting 29 C.F.R. § 1630.2(o)(3)). The purpose of this process is to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Kleiber*, 485 F.3d at 871 (quoting 29 C.F.R. § 1630.2(o)(3)).

While the ADA's statutory text makes no reference to an "interactive process," participation in the interactive process is mandatory and "both parties have a duty to participate in good faith." *Fisher v. Nissan North America, Inc.*, 951 F.3d 409, 421 (6th Cir. 2020). If the interactive process is unsuccessful, "courts should attempt to isolate the cause of the breakdown and then assign responsibility." *Ibid*. With respect to the parties' participation in the interactive process, the record reveals the following.

On December 14, 2020, Human Resource Assistant, Sonya Goddard, informed Cathy Bond and Dan Hartman that Plaintiff requested to bring her "therapy dog" with her to work. (ECF No. 46-5 at PageID.856). On December 17, 2020, Plaintiff informed Cathy Bond that Flex "is fully trained as a service dog, not an emotional support animal." (ECF No. 42-3 at PageID.263).

The following day, Bond responded by noting that she had been informed that Flex was "an emotional therapy dog" and that "[t]hose are not service animals protected by the ADA." (ECF No. 42-3 at PageID.265). Bond further informed Plaintiff that "[i]f you have paperwork that the dog providing service is in accordance

with the ADA, then provide me with the documentation and I will review its legitimacy with corporate counsel." (*Id.*).

On December 21, 2020, Plaintiff responded to Bond's request, noting that, while she was "happy to provide extra documentation," BRH "cannot legally tell me he cannot come until you receive the doctor's note." (ECF No. 42-3 at PageID.267). Bond responded, "I don't want your medical information. I want to know that the dog is a registered service dog." (*Id.*). Plaintiff responded to this request by noting that "there is no such thing as a service dog registry through the ADA." (*Id.*). Plaintiff further stated that "[t]here will be official documentation, other than providing a medical provider's letter, stating that he is a service dog." (*Id.*).

On December 22, 2020, Defendant's Compliance Director, Jason Sweeney, communicated with Cathy Bond and Sonya Goddard. (ECF No. 46-8 at PageID.902). Sweeney informed the pair that, because Plaintiff "is claiming that [Flex] is a service animal and not a comfort animal. . .[a]ll we can ask is whether it is for a disability and what service it has been trained to perform." (*Id.*). Sweeney noted that "[w]e cannot ask to have [Flex] demonstrate the task or ask for documentation." (*Id.*).

Sweeney further observed that "[w]e have to allow the dog. . .if she told us initially that it was a comfort animal and is now changing her story. . .that might be enough to deny her bringing the dog, but it's a risk." (*Id.*). Sonya Goddard responded by noting that "[a]t the end of orientation is when [Plaintiff] told us that it was a Therapy Dog! We never once heard her say that it was a Service Animal." (*Id.*). Sweeney responded by stating, "I am comfortable that we can ask for

documentation from a physician indicating that [Plaintiff] has a covered disability and reasonable assurances that the dog is trained in a task to assist with the disability, including that the dog has received training (certified by a licensed trainer)." (ECF No. 46-8 at PageID.903).

On December 23, 2020, Dan Hartman communicated with Plaintiff. (ECF No. 42-3 at PageID.269-70). Hartman informed Plaintiff that BRH "has a general 'no animals' policy, excepting qualified service animals." (*Id.* at PageID.269). Accordingly, Hartman requested that Plaintiff provide him with the following: (1) documentation from a physician indicating that she has a disability as defined by the ADA; (2) "certification from an accredited service animal trainer indicating that your service animal has been trained to assist you with your disability"; and (3) certified vaccination records for her service animal. (*Id.*). Hartman further stated that, once Plaintiff provided this information, she would be permitted to bring her service animal for "a trial period." (*Id.*). But Hartman also placed Plaintiff on "suspension" pending submission of the requested information. (*Id.*).

On December 28, 2020, John Dowling, MA, LPC, communicated with Hartman. (ECF No. 42-3 at PageID.278-79). Dowling reported that he had been treating Plaintiff since January 2019 and that his efforts were "focused on managing her mood disorder." (*Id.* at PageID.278). Dowling also observed that Plaintiff's "service dog" was an "important part" of her treatment. (*Id.*).

In a letter dated January 6, 2021, Hartman requested that Plaintiff participate in a meeting on January 11, 2021. (ECF No. 42-3 at PageID.272). Hartman

requested that Plaintiff "bring all of the required documentation mentioned in my letter dated December 23, 2020. If you have all of the documentation for your service animal, you may bring it as well. It is my intent for you to be reassigned with or without the dog." (*Id.*).

Plaintiff also received an email from Cathy Bond inviting her to attend the January 11, 2021 meeting with Dan Hartman. (ECF No. 42-4 at PageID.297; ECF No. 42-5 at PageID.325; ECF No. 46-7 at PageID.878). On January 7, 2021, Plaintiff responded to this email, declining the invitation to attend the meeting due to a previously scheduled medical appointment. (ECF No. 42-4 at PageID.284;ECF No. 46-7 at PageID.878). Plaintiff "believe[s]" that she later contacted Bond to reschedule a meeting with Hartman. (ECF No. 42-4 at PageID.285). Bond disputes this, however, asserting that she "never heard from [Plaintiff] after she declined the invitation." (ECF No. 42-5 at PageID.325). Bond also concedes, however, that neither she nor anybody else made any effort to contact Plaintiff to reschedule the meeting with Dan Hartman. (ECF No. 46-7 at PageID.878).

In a letter dated January 11, 2021, Human Resources Deputy Director McKenzie Carroll informed Plaintiff that her employment was immediately terminated "due to not being a right fit for Bear River Health." (ECF No. 42-3 at PageID.276). Dan Hartman later testified that Plaintiff was fired because she failed to attend the January 11, 2021 meeting. (ECF No. 46-19 at PageID.946). Cathy Bond, however, testified that it was "not fair" to characterize Plaintiff as a "no show"

for this meeting because Plaintiff had, in fact, informed Bond four days prior that she would not be attending the meeting. (ECF No. 46-7 at PageID.878).

Defendant's argument that Plaintiff "failed to participate in the interactive process" rests upon Plaintiff's failure to attend the January 11, 2021 meeting with Dan Hartman. Viewing the evidence in a light most favorable to Plaintiff, however, a reasonable juror could conclude that the breakdown in the interactive process is *at least* equally attributable to Defendant.

The purpose for requiring the interactive process is to allow Defendant an opportunity to "identify the precise limitations resulting from [Plaintiff's] disability and potential reasonable accommodations that could overcome those limitations." *Kleiber*, 485 F.3d at 871 (quoting 29 C.F.R. § 1630.2(o)(3)). Defendant's initial communications to Plaintiff, following her request for accommodation, appear more focused on Flex's "status" rather than attempting to identify the limitations Plaintiff experienced due to her disability and determining whether such could be accommodated.

Dan Hartman's December 23, 2020, letter to Plaintiff appears to be more appropriately focused. Plaintiff, however, appears to have responded to Hartman's request in good faith by providing Defendant with relevant information. Hartman thereafter requested that Plaintiff attend a meeting to further discuss the matter. But there is no evidence that Hartman, or anybody else, attempted to determine, prior to scheduling the meeting, whether Plaintiff was available on the requested date. This failure is relevant considering that Hartman requested that Plaintiff

meet with him only five days later. It is also relevant that Hartman's letter contains no language indicating that failure to attend the meeting would result in termination or any other adverse employment action. Furthermore, Hartman's statement that "[i]t is my intent for you to be reassigned with or without the dog" can reasonably be interpreted as Hartman having already determined how to respond to Plaintiff's accommodation request before even meeting with her.

Plaintiff timely declined an invitation to attend the meeting, she did not explicitly decline to participate in the interactive process. There is no evidence that anyone associated with Defendant attempted to reschedule the meeting or even determine why Plaintiff declined the invitation. Instead, Defendant simply terminated Plaintiff's employment that same day. As noted above, however, the reason for Plaintiff's termination is unclear. Regardless of Defendant's rationale, however, the circumstances of Plaintiff's termination can reasonably be interpreted as evidencing a lack of good faith.

In sum, Defendant has failed to demonstrate the absence of a genuine factual dispute on the question of responsibility for the breakdown in the interactive process. Accordingly, Defendant's motion for summary judgment is denied.

## II. Defendant Asserted No Further Argument in its Motion

In its reply brief, Defendant appears to argue that it is entitled to relief on the alternative ground that Plaintiff, in response to the motion for summary judgment, failed to present evidence that she could prevail on the elements of her claims which she must establish at trial. The Court disagrees.

As noted above, a party moving for summary judgment can satisfy its burden by *demonstrating* that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo*, 398 F.3d at 761. Only where the moving party satisfies this initial requirement must the moving party " identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357.

Defendant failed to demonstrate in its motion that Plaintiff lacked sufficient evidence to prevail on any of its claims. Defendant simply advanced no such argument. Defendant did not identify Plaintiff's claims or any of the elements Plaintiff must establish to prevail on her claims. Having failed to identify any of the elements Plaintiff would have to prove at trial, Defendant cannot reasonably argue that it *demonstrated* that Plaintiff lacks the evidence to establish any of the elements of her claims. Defendant's brief, rather than arguing that Plaintiff lacks evidence on any element of her claims, instead merely argues that its interpretation of the underlying facts is more credible or persuasive. While a jury may find such arguments relevant, this Court cannot resolve credibility disputes when resolving a motion for summary judgment.

In sum, the Court finds that Defendant failed to assert in its motion for summary judgment any argument that Plaintiff lacked sufficient evidence to prevail on any of her claims. Furthermore, to the extent that Defendant's reply brief is

interpreted as asserting such an argument, such is rejected. *See, e.g., Stewart v. IHT Insurance Agency Group, LLC*, 990 F.3d 455, 457 (6th Cir. 2021) ("even well-developed arguments raised for the first time in a reply brief come too late"); *Stillwagon v. City of Delaware*, 175 F.Supp.3d 874, 890 (S.D. Ohio 2016) ("[a]n issue raised for the first time in a reply brief has not been fully briefed, and thus, is not appropriate for decision").

## **CONCLUSION**

For the reasons articulated herein, Defendant's Motion for Summary Judgment (ECF No. 42) is denied. An Order consistent with this Opinion will enter.

Date: September 11, 2023 /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge